UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD RISNER,

     Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

_____/

Hon. Sally J. Berens

Case No. 1:20-cv-1209

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g),
to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for
Supplemental Security Income (SSI) under Title XVI of the Social Security Act. The parties have
agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that
if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The
Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks
review of the Commissioner's decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the
record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human
Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is
limited to determining whether the Commissioner applied the proper legal standards and whether

there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker may properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed an application for SSI on February 5, 2019, alleging that he had been disabled as of December 31, 2014, due to mental problems and illiteracy.[1] (PageID.88–99, 175–78.)

---

[1] Plaintiff filed a previous application for benefits, which was denied on April 24, 2015. (PageID.191.)

Plaintiff was 52 years old at the time he filed his application. (PageID.98.) Plaintiff had a ninth-grade education and attended special education classes. (PageID.195.) Plaintiff's past relevant work was as a construction worker and a farm laborer. (PageID.59, 195.) After Plaintiff's application was denied, he requested a hearing before an ALJ.

On February 21, 2020, ALJ Amy L. Rosenberg held a hearing and received testimony from Plaintiff and Amelia Shelton, an impartial vocational expert (VE). (PageID.65–96.) At the hearing, Plaintiff amended his onset date to February 5, 2019. (PageID.48.) On April 8, 2020, the ALJ issued a written decision finding that Plaintiff was not entitled to benefits because he had not been disabled since the date he filed his application. (PageID.48–61.) The Appeals Council denied Plaintiff's request for review on October 21, 2020. (PageID.34–36.) Therefore, the ALJ's ruling became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007).

Plaintiff initiated this civil action for judicial review on December 16, 2020.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[2]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff had not engaged in substantial gainful activity since his application date, the ALJ found that Plaintiff suffered from severe impairments of chronic obstructive pulmonary disease (COPD); intellectual disorder; alcohol use disorder; and cannabis use disorder. (PageID.50.) The ALJ determined that Plaintiff's gastritis and esophageal candidiasis, mandible and rib fractures, degenerative disc disease, and osteoarthritis of the left lower extremity, low back and bilateral shoulders were non-severe impairments. (PageID.50–51.)

---

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.51–54.) The ALJ considered listing 3.02 with regard to Plaintiff's COPD and listing 12.05 with regard to his intellectual disorder.

The ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), except that:

> he can frequently climb, balance, stoop, kneel, crouch and crawl. The claimant can only occasionally reach overhead, and an [sic] tolerate just occasional, brief exposure to extreme cold, extreme heat, and elevated levels of pulmonary irritants such as dusts, odors, fumes, gases and smoke (brief exposure being defined as no longer than a minute or two at a time; elevated meaning more than found in a typical office environment). The claimant can understand, remember and carry out simple, routine tasks and make simple work-related decisions. He can tolerate occasional interactions with supervisors, coworkers and the public. The claimant can adapt to occasional simple changes in the routine work setting. He can work independently without special supervision. He is able to be aware of normal workplace hazards and take appropriate precautions.

(PageID.54.)

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. (PageID.59.) At step five, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the occupations of marker, small products assembler, and inspector hand packager, approximately 225,000 of which existed in the national economy. (PageID.65–66.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (stating that "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## DISCUSSION

Plaintiff raises three issues in his appeal: (1) the ALJ erred in finding Plaintiff's degenerative disc disease and osteoarthritis of the left lower extremity and bilateral shoulders to

be non-severe impairments; (2) the ALJ's finding that Plaintiff does not meet listing 12.05(B) is not supported by substantial evidence; and (3) the ALJ erred by failing to include all of Plaintiff's limitations from his impairments within the RFC determination and in the controlling hypothetical posed to the VE. (ECF No. 18 at PageID.816.)

## I.    Failure to Find Impairments Severe at Step Two

In his February 2019 application for benefits, Plaintiff alleged disability due to mental problems and illiteracy. (PageID.98–99.) Plaintiff first alleged physical impairments during a May 16, 2019 physical consultative examination by Michael Geoghegan, D.O. Plaintiff reported chronic pain in his left lower leg, his lumbar spine, and both shoulders. Plaintiff reported that his left lower leg was surgically repaired in 2001 after it was fractured in a motor vehicle accident. Plaintiff said that he had chronic pain in the lower portion of his left leg due to the injury and the surgery. He also told Dr. Geoghegan that the pain in his leg led to pain in his lumbar spine. Regarding his shoulders, Plaintiff reported that his right rotator cuff and his left clavicle were injured in an assault in 2013. Plaintiff had never participated in physical therapy or received intraarticular injections for his left leg or knee to manage his pain, did not require an assistive device, and reported that he could walk comfortably for about a mile. He had recently received a recommendation to undergo surgery for repair of the rotator cuff, but no surgery had been recommended for his left clavicle. Physical therapy had been recommended for both shoulders, but Plaintiff had not been able to complete any therapy at the time. (PageID.679.)

The ALJ found these impairments non-severe:

I further note that the claimant has a history of low back pain, a left lower extremity injury with surgical repair and bilateral rotator cuff injuries. The claimant did not participate in physical therapy or seek any chiropractic or pain management treatment. Other than surgical repair of his left lower extremity at the time of injury, the claimant did not undergo any surgical treatment for these conditions. During an examination in May of 2019, the claimant reported that he was able to walk comfortably and independently for about a mile and stand in one place for about 20

6

minutes. An examination was remarkable for decreased range of motion in the shoulders with full lumbar range of motion, negative straight leg raise testing, full grip strength, normal pincher strength, and full bilateral hand dexterity. The claimant did not have any difficulty getting on/off the examination table and had only mild difficulty with heel and toe walking and squatting. The consultative examiner concluded that the claimant's pain in his low back, left leg and bilateral shoulders was likely due to osteoarthritis (Exhibit 7F). In addition, the claimant indicated that he took only ibuprofen as needed for pain relief since July 2019 (9E).

I conclude that the claimant's possible osteoarthritis with pain in his lumbar spine, left lower extremity and bilateral shoulders results in no more than minimal limitations in his ability to perform work-related activities and is not a severe impairment. When a claimant alleges a condition severe enough to be disabling, there is a reasonable expectation that he will seek examination and treatment. The failure of the claimant to seek examination and treatment for his low back pain, left lower extremity injury or bilateral shoulder condition is inconsistent with his allegations that the conditions are disabling.

(PageID.51.)

A "severe impairment" is defined as an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 416.922(a). An impairment is considered non-severe "only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).

Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. As the Sixth Circuit explained more recently:

> Though the ALJ concluded that Hedges did not have any severe mental-health
> impairments, the ALJ did find that Hedges suffered from four severe physical
> impairments. And once an ALJ finds that a claimant has at least one severe
> impairment at step two of the disability analysis, the ALJ must then "consider the
> limiting effects of all [the claimant's] impairment(s), even those that are not severe"
> in evaluating the claimant's ability to work in step four. 20 C.F.R. § 404.1545(e)
> (emphasis added). That is what the ALJ did here. So whether the ALJ characterized
> Hedges' mental-health impairments as severe or non-severe at step two is "legally
> irrelevant" and does not amount to error.

*Hedges v. Comm'r of Soc. Sec.*, 725 F. App'x 394, 395 (6th Cir. 2018) (quoting *Anthony v. Astrue*,

266 F. App'x 451, 457 (6th Cir. 2008)).

Plaintiff contends that the history of these impairments and subjective complaints of pain

he reported to Dr. Geoghegan, as well as Dr. Geoghegan's findings of decreased range of motion

in Plaintiff's bilateral shoulders and Plaintiff's mild difficulty performing orthopedic maneuvers,

show that Plaintiff's degenerative disc disease and osteoarthritis of the lower left extremity, lower

lumbar spine, and bilateral shoulders amount to more than a slight abnormality and easily meet the

*de minimis* standard imposed at step two. The Court need not determine whether the ALJ erred in

concluding that these impairments were non-severe, however, because the ALJ found that

Plaintiff's COPD, intellectual disorder, alcohol use disorder, and cannabis use disorder were severe

impairments. (PageID.50.) Thus, as explained in *Hedges*, it was "legally irrelevant" that the ALJ

did not find Plaintiff's other impairments to be severe, as the ALJ was required to consider the

limiting effects of all Plaintiff's impairments, both severe and non-severe, in formulating his RFC.

*Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013).

Review of the ALJ's decision shows that she considered all of Plaintiff's medically-

determinable impairments at subsequent steps of the sequential evaluation process. For example,

in the RFC finding, the ALJ limited Plaintiff to only occasional reaching overhead—consistent

with his shoulder impairment and reduced range of motion in his shoulders. (PageID.54.) The ALJ

also considered Plaintiff's allegations of difficulty lifting, walking, and climbing stairs in his

function report; his statements to Dr. Geoghegan about shoulders and leg; and his hearing

testimony concerning that he was unable to work due to issues with his shoulder and his leg giving

out. (PageID.55, 76, 202, 678.) In addition, the ALJ found persuasive the prior administrative

findings of non-examining physical medical consultant Francis Grubelich, M.D., who considered

Plaintiff's allegations regarding his lumbar spine and shoulders but found them unsupported by

the medical evidence. (PageID.56, 107.) The ALJ also recognized that, when assessing Plaintiff's

RFC, she was required to consider all impairments, both severe and non-severe. (PageID.50 (citing

20 C.F.R. §§ 416.920(e) and 416.945; SSR 96-8p).) *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d

844, 851–52 (6th Cir. 2020) (noting that "an ALJ need not specifically discuss all nonsevere

impairments in the residual-functional-capacity assessment when the ALJ makes clear that her

decision is controlled by SSR 96-8p"). Finally, the Sixth Circuit has emphasized that an ALJ's

decision is to be read as a whole, and the ALJ is not required to restate her factual analysis

throughout the decision. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012)

("So long as the ALJ's decision adequately explains and justifies its determination as a whole, it

satisfies the necessary requirements to survive this court's review"); *Rice v. Barnhart*, 384 F.3d

363, 370 n. 5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole . . . it would be

a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts

of the decision"). While the ALJ did not specifically mention Plaintiff's leg, back, and shoulder

impairments in her RFC discussion, her discussion at step two adequately demonstrates that she

considered whether Plaintiff's back, leg, and shoulder impairments caused any functional

limitations and, with the exception of a limitation for Plaintiff's shoulder issue, concluded that

they did not. *See Carpenter v. Comm'r of Soc. Sec.*, No. 2:18-cv-1250, 2019 WL 3315155, at *10

(S.D. Ohio July 24, 2019), *report and recommendation adopted*, 2019 WL 3753823 (S.D. Ohio

Aug. 8, 2019) (concluding that the ALJ's step-two discussion adequately demonstrated her basis for concluding that Plaintiff's unspecified depressive disorder did not warrant additional limitations).

Accordingly, this argument lacks merit.

## II.   Listing 12.05(B) Findings

Plaintiff next contends that the ALJ's finding that Plaintiff did not meet Listing 12.05 for his intellectual impairment because the "paragraph B" criteria were not satisfied was not supported by substantial evidence.

At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1. An impairment that meets only some of the requirements of a listing does not qualify, regardless of its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled and entitled to benefits. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant bears the burden of demonstrating that he meets or equals a listed impairment. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014).

A claimant may meet this listing by satisfying either the A criteria or the B criteria. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05. Because Plaintiff was able to take an IQ test, only the B criteria were relevant. To meet the B criteria, Plaintiff was required to demonstrate, among other things, significant deficits in adaptive functioning manifested by extreme limitation in one, or marked limitation in two, of the following areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* § 404, Subpt. P, App. 1, § 12.05(B)(2). The ALJ

10

found that the totality of the evidence did not show significant deficits in adaptive functioning, as Plaintiff had only moderate limitations in all areas of mental functioning. (PageID.52–53.)

Plaintiff contends that the evidence the ALJ cited in support of these findings is either inconsistent with the record as a whole or otherwise incorrect or inaccurate. (ECF No. 18 at PageID.833–37.) This argument lacks merit, as substantial evidence supports the ALJ's findings.

First, Plaintiff argues that the ALJ's reliance on his report that he could drive a car and had repaired small engines ignores that Plaintiff lacked the literacy skills to obtain a valid driver's license and merely disassembled small engines. However, the ALJ recognized that Plaintiff has never had a valid driver's license (PageID.52), and the fact that he had the ability to operate a motor vehicle nonetheless indicates a higher level of functioning. As for repairing small engines, Plaintiff, in fact, said that he "work[ed] on small engines; repair." (PageID.210.) His evidence that he only disassembled them comes not from Plaintiff, but from counsel's argument in a brief requesting review of the ALJ's decision. (PageID.246.) In any event, Plaintiff ignores the other activities the ALJ cited, including his abilities to communicate effectively, care for his own personal grooming and hygiene independently, purchase necessities, maintain relationships with his uncle and girlfriend, prepare meals, perform housework, pay bills, count change, watch and follow along with movies, and understand treatment plans and care instructions when verbally conveyed to him. (PageID.52–53.) The ALJ's discussion thus shows that she evaluated the record as a whole in considering this listing. Moreover, the ALJ properly considered the field office claims representative's observations of Plaintiff while assisting him in completing his application, as this was a part of "all of the evidence presented." 20 C.F.R. § 416.929(c)(3); *see also* SSR 16-3p 2016 WL 1119029, at *7 (March 16, 2016) ("We will consider any statements in the record noted by agency personnel who previously interviewed the individual, whether in person or by

telephone. The adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file."). Thus, it was not "unfair," as Plaintiff asserts, for the ALJ to consider the field representative's observations.

Plaintiff next contends that the ALJ misconstrued the record when she observed that, despite Plaintiff's reports of an inability to read or write, Plaintiff told Dr. Geoghegan during the consultative examination that he was able to write comfortably for around ten or fifteen minutes without stopping. (ECF No. 18 at PageID.835–36.) Plaintiff says that, read in proper context, this statement speaks more to the extent of his grip strength and dexterity than his literacy skills. He further contends that the ALJ provided no context to this statement to show the extent to which Plaintiff could write, particularly given other evidence in the record indicating that Plaintiff likely cannot read or write. Nonetheless, the ALJ accurately summarized Dr. Geoghegan's statement, which indicated that Plaintiff confirmed he could write with "comfort" for a period of time. (PageID.58, 678.) Moreover, as to the issue of illiteracy, Plaintiff told Dr. Geoghegan that he "cannot read but can write." (PageID.679.) Thus, the ALJ's finding was adequately supported by Plaintiff's own statements.

Last, Plaintiff contends that the ALJ's characterization of his work history—showing "that he worked only minimally prior to the application date"—was improper and inaccurate as his work history since 1980 has been "sporadic." (ECF No. 18 at PageID.836.) Plaintiff asserts that he only had two jobs during the 15 years prior to the hearing, which lasted only months, because his impairments prevented him from sustaining employment on a regular basis. However, in his application, Plaintiff reported that he had been disabled only since December 31, 2014, while in his disability report, he indicated that he stopped working on August 31, 2014, and that his

conditions did not cause him to make changes to his work activity. (PageID.175, 194.) Thus, the ALJ permissibly concluded that Plaintiff's work history suggested that his continuing unemployment was unrelated to his impairments. (PageID.59.) In addition, Plaintiff's incarceration history for numerous drunk driving convictions—a total of 17 years by one of his accounts and 23 years according to another (PageID.251, 671)—provides an alternative explanation for his sporadic work history unrelated to his impairments.

Two key considerations also undermine Plaintiff's argument. First, the ALJ found both the prior administrative findings of Robert Gerl, Ph.D., that Plaintiff had no more than moderate mental limitations, and the opinion of psychological consultative examiner Samantha Wheeler, Ph.D., that Plaintiff had no more than moderate mental limitations, persuasive. (PageID.57–58.) Plaintiff does not contest the ALJ's persuasiveness findings, which provide additional support for the ALJ's conclusion that Plaintiff did not meet listing 12.05. Second, Plaintiff was previously found "not disabled" in a binding determination issued on April 24, 2015, even though his intellectual disorder existed prior to that date. (PageID.191.) Plaintiff presents no evidence that his condition has worsened since the prior determination.

In sum, the ALJ properly weighed the evidence in the record as a whole in determining that Plaintiff did not meet listing 12.05. Plaintiff's arguments to the contrary are based on nothing more than his own interpretation of the evidence. *See Huizar v. Astrue*, No. 3:07CV411, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Because the ALJ's findings are supported by substantial evidence, this argument is rejected.

## III.      Failure to Consider All of Plaintiff's Impairments

Plaintiff's final argument is that the ALJ failed to consider the effects of all of his impairments, both severe and non-severe, in formulating his RFC finding. He contends that this error was compounded by the submission of a deficient hypothetical to the VE. This argument is merely a conglomeration of the prior arguments. Plaintiff thus fails to demonstrate error in the RFC finding or the hypothetical posed to the VE for the reasons set forth above.

Accordingly, the ALJ properly considered the effects of all of Plaintiff's impairments, and his decision was supported by substantial evidence.

## **<u>CONCLUSION</u>**

For the reasons stated above, the Commissioner's decision is **affirmed**. An order consistent with this opinion will enter.

Dated: June 28, 2022                                    /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        U.S. Magistrate Judge